PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| LAWRENCE SALERNO, *et al.*, ) | |
| ) | CASE NO. 1:23-CV-01419 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| FAMILY HERITAGE LIFE INSURANCE ) | |
| COMPANY, ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | [Resolving ECF Nos. 72 and 73] |

Pending is Defendant Family Heritage Life Insurance Company's ("Family Heritage")

Motion for Partial Summary Judgment against Plaintiffs Lawrence Salerno, Dynasty Financial

Group LLC, and Pinnacle Brokerage Firm LLC (collectively "Plaintiffs"). *See* SEALED Mot.

for Partial Summary J., ECF No. 72 *and* Redacted Mot. for Partial Summary J., ECF No. 73.

Plaintiffs responded in opposition. *See* SEALED Mem. in Opp'n, ECF No. 81, *and* Redacted

Mem. in Opp'n, ECF No. 82. Defendant replied. *See* Reply Br., ECF No. 85. The Court has

been advised, having reviewed the record, the parties' briefs, and the applicable law. For the

reasons below, the motion is granted in part and denied in part.

### I.     Background

Family Heritage and Plaintiffs entered contracts ("Marketing Agreements") for the

recruitment of sales representatives, and the sale of insurance products in 2002 (*via* Mr. Salerno,

2002–June 30, 2023), 2003 (*via* Pinnacle, 2003–2011), and 2011 (*via* Dynasty, 2011–June 30,

2023), which were all terminated in June 2023. *See* Compl.*, ECF No. 1 at PageID ##: 6–7,

¶¶ 17–20. These Marketing Agreements, in relevant part, included non-compete agreements,

(1:23CV1419)

forfeiture provision, provisions for the payment of commissions on sales and renewals for insurance policies, agreements on a system of advances, debts, and setoff or recoupments against commissions, and compensation in general. *See generally* Agreements, ECF Nos. 1-1, 1-2, 1-3. Under the Marketing Agreements, Plaintiffs recruited sales representatives and built a sales organization for the successful and lucrative sale of Family Heritage insurance products. *See* Compl., ECF No. 1 at PageID ##: 7–8, ¶¶ 21–22.

On June 30, 2023, Family Heritage terminated the Marketing Agreements, citing breach of contract, specifically that Plaintiffs were selling competitor's insurance products in violation of the non-compete provision. *See* June 30, 2023 Letter, ECF No. 1-5. Family Heritage also claimed that the breach meant Family Heritage would "exercise[] its right under the parties' agreements to forfeit all future commissions" and demanded repayment of any indebtedness. ECF No. 1-5 at PageID #: 96. Plaintiffs then sued Family Heritage with claims of Count One (Declaratory Judgment), Count Two (Breach of Contract), Count Three (Unjust Enrichment), Count Four (Conversion), and Count Five (Defamation). *See* Compl., ECF No. 1. Family Heritage responded with counterclaims of Count One (Breach of Contract), Count Two (Indemnification), and Count Three (Promissory Estoppel). *See* First Amended Counterclaim, ECF No. 36. The Court later granted "judgment to Plaintiffs on their breach of contract claim on the forfeiture provision" finding that it was "an unenforceable penalty and [Family Heritage] may not recover from it." *See* Order, ECF No. 39 at PageID #: 830.

Family Heritage now moves the Court for partial summary judgment as to Plaintiffs' claims for Count One (Declaratory Judgment), Three (Unjust Enrichment), Four (Conversion), and Five (Defamation). *See* SEALED Mot. for Partial Summary J., ECF No. 72.

2

(1:23CV1419)

## II.    Standard of Review

A party may move for partial summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a).  "When a party moves for summary judgment on a part of a claim, the party is seeking a decision on a particular element." *Glob. Digit. Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, No. 18-80106-Civ-Middlebrooks/Brannon, 2019 WL 8275153, at *2 (S.D. Fla. Nov. 27, 2019); *see also Hudak v. Clark*, No. 3:16-CV-288, 2018 WL 1785865, at *2 (M.D. Pa. Apr. 13, 2018) ("Rule 56 contemplates the possibility that summary judgment may be entered on less than a full claim and on one or fewer than all of the elements necessary to establish a claim."). "[C]ourts throughout the country have held that Rule 56 does not authorize a motion which is solely intended to establish the truth of particular facts." *Robertson v. F. Martin*, No. CV 20-4173-JLS(E), 2021 WL 545895, at *2 (C.D. Cal. Jan. 4, 2021) (collecting cases).  "Partial summary judgment is often sought on matters such as liability or with respect to a particular claim or defense.  It is not typically used to seek a judgment that a particular fact occurred, especially when that fact does not even establish an entire element of the underlying claim." *Samuels v. Arnold*, No. 11-cv-0201, 2012 WL 6020089, at *2 (W.D. La. Nov. 19, 2012), *report and recommendation adopted*, No. 11-cv-0201, 2012 WL 6020084 (W.D. La. Dec. 3, 2012) (denying plaintiff's motion for partial summary judgment).

As the Seventh Circuit has noted, the label "'partial summary judgment' is, of course, consistent with section (d) of Rule 56, which allows a court to establish facts prior to trial over which there is no 'substantial controversy.'" *ODC Commc'ns Corp. v. Wenruth Invs.*, 826 F.2d 509, 515 (7th Cir.1987).  Partial summary judgment is an appropriate mechanism for resolving core, undisputed issues to bring about more efficient and focused trials.  *See Bonasera v. New*

(1:23CV1419)

*River Elec. Corp.*, 518 F. Supp. 3d 1136, 1152–57 (S.D. Ohio 2021) (granting motion for partial summary judgment on the issue of whether the decedent was occupying a truck at the time of an accident); *Comer v. Shrum*, 4:18-cv-58, 2021 WL 2210592, at *2–3 (E.D. Tenn. June 1, 2021) (plaintiffs moved for partial summary judgment against all three defendants and court granted partial summary judgment on the issue of whether "a bullet fired from [a single defendant's] gun" was "the cause of death" of plaintiffs' decedent because that defendant was estopped from disputing the cause-of-death issue); *Bowling v. CSX Transp., Inc.*, No. 1:11-cv-598-HJW, 2013 WL 866459, at *6 (S.D. Ohio March 7, 2013) ("Absent any genuine disputes of material fact on this issue, plaintiff[] is entitled to partial summary judgment on the element of negligence *per se*") (italics added). "The freedom to use summary judgment procedure to address particular issues or elements of a claim is an important feature of Rule 56, making it a much more useful case management device. . . ." 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.122[2] (Matthew Bender 3d ed. 2024).

A motion for partial summary judgment should be granted when there is no genuine dispute as to any material fact on the part of the claim at issue. FED. R. CIV. P. 56(a). There is no genuine factual dispute if the opposing party cannot present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts" at issue in the case. *Blume v. Potter*, 289 F. App'x. 99, 102 (6th Cir. 2008) (brackets in original) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)).

### III.     Analysis

A. *Count One: Declaratory Judgment*

"[C]ourts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." O.R.C. § 2721.02. "[A] contract may be construed by a

4

(1:23CV1419)

declaratory judgment or decree either before or after there has been a breach of contract."

O.R.C. § 2721.04.  Ohio courts have permitted actions which assert both breach of contract and

declaratory judgments related to the contracts to move forward.  *See, e.g.*, *Scott Fetzer Co. v. Am.*

*Home Assurance Co.*, 229 N.E.3d 70, 72 (Ohio 2023).  When Ohio courts have prevented such

actions, it has been based on Ohio's "jurisdictional priority rule" which "divests" the secondary

court of the "requisite jurisdiction" when it is a second action for the same claims with the same

parties.  *See generally* *State v. Crawford*, 678 N.E.2d 549 (Ohio 1997).

    Family Heritage argues that the matters on which Plaintiffs seek declaratory judgment are

"explicitly governed by the Marketing Agreements."  ECF No. 72 at PageID #: 1303.  Therefore,

Family Heritage urges, because Plaintiffs cannot show that "they are entitled to declaratory relief

[] judgment should be granted in Family Heritage's favor."  ECF No. 72 at PageID #: 1303.

    Plaintiffs respond that they have established their declaratory judgment claims.  Plaintiffs

also claim that Family Heritage's argument that the declaratory judgment claims fail because of

the contract claims are "made up out of thin air."  ECF No. 81 at PageID #: 1640.  Plaintiffs

further claim that declaratory judgments were the only claims they had available at the time of

suit and that Plaintiffs had a statutory right to seek declaration before or after the alleged breach.

ECF No. 81 at PageID #: 1640–41.

    Family Heritage has not shown that Count One should be dismissed.  The declaratory

judgment claims have been sufficiently established and Ohio does not require the dismissal of

declaratory judgment claims because there is an existing contract.[1]  Thus, Family Heritage's

motion for partial summary judgment as to Count One is denied.

---

    [1] Neither side has argued that the jurisdictional priority rule is at issue.

(1:23CV1419)

B. *Count Three: Unjust Enrichment*

Generally, "[when] an express contract existed between the parties, [the moving party] cannot rely upon any theory of quasi-contract for recovery." *Donald Harris Law Firm v. Dwight-Killian*, 853 N.E.2d 364, 367 (Ohio Ct. App. 2006). "Under the doctrine of unjust enrichment, that is quantum meruit, a party may recover the reasonable value of services rendered *in the absence of an express contract* if denying the recovery would unjustly enrich the opposing party. [ ] Absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment." *Donald Harris Law Firm*, 853 N.E.2d at 367 (emphasis in original).

Family Heritage argues that Plaintiffs claim for unjust enrichment fails as a matter of law. Family Heritage argues that the Marketing Agreements are an express contract which govern each of Plaintiffs' claims that Family Heritage was unjustly enriched by (1) retaining commissions, (2) recouping charges on advancement accounts, (3) obtaining premiums from policies sold, and (4) seizing Plaintiffs' sales organization. *See* SEALED Mot. for Partial Summary J., ECF No. 72 at PageID #: 1306. Because an express contract governs each of those claims, Family Heritage argues that the unjust enrichment claim fails. ECF No. 72 at PageID #: 1306.

Plaintiffs respond that they have established their unjust enrichment claim by showing that Family Heritage has been unjustly enriched by, among other things, the retention, redistribution or promotion of its former sales organization, Dynasty. Consequences of this the Marketing Agreements do not cover. *See* SEALED Mem. in Opp'n ECF No. 81 at PageID #: 1743. In the alternative, Plaintiffs aver that if the contract covers their claim for unjust enrichment, there is an exception allowing redundancy when there is "evidence of fraud, bad

6

(1:23CV1419)

faith or illegality." ECF No. 81 at PageID #: 1644 (citing *Gascho v. Glob. Fitness Holdings*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012) (finding if the unjust enrichment claim is broader than the breach of contract claim because it is "not contingent on the existence of a contract between the parties," the unjust enrichment claim survives a dispositive motion) (parenthetical modified).

The Court finds that, while several matters alleged under the unjust enrichment claim are covered by the Marketing Agreements, the issue of retention or redistribution of Plaintiffs' former sales organization is not covered.  Therefore, because the Marketing Agreements covered commissions, advancement accounts, and premiums from policies sold, s*ee, e.g.*, Salerno Agreement, ECF No. 1-1 at PageID ##: 51–54, Plaintiffs cannot rely on the quasi-contract theory of unjust enrichment to address those matters.  Because the contract does not address the matter of the former sales organization's retention or redistribution by Family Heritage after a termination, that claim is "conceptually broader than the express contract and remains as an unjust enrichment claim, surviving summary judgment.  *Gascho*, 863 F. Supp. 2d at 699–700.  Therefore, summary judgment is denied on the claims of retention or redistribution of Plaintiffs' former sales organization.

Plaintiffs also argue that unjust enrichment claims are valid under the exception of fraud, bad faith, or illegality.  The case law cited by Plaintiffs, however, permitted unjust enrichment because (1) the validity of the express contract itself was in question, and (2) the unjust enrichment claim was "conceptually broader" because "it [was] not contingent on the existence of a contract between the parties."  *Id.*  In this case, Plaintiffs do not argue that the Marketing Agreements themselves are invalid.  Rather, their argument is that Family Heritage has behaved in bad faith.  *See* SEALED Mem. in Opp'n, ECF No. 81 at PageID #: 1645.  Plaintiffs seem to be arguing that Family Heritage exhibits bad faith because (1) it utilized the forfeiture provision as a

7

(1:23CV1419)

penalty and (2) it continues to unlawfully retain all the commissions.  ECF No. 81 at PageID #: 1645.

The Court maintains the ruling that "[t]he Marketing Agreement's provision that forfeits all going-forward commissions should Plaintiff market any other insurance company products while involved with Family Heritage is an unenforceable penalty."[2]  *See* Order, ECF No. 39 at PageID # 823.  That said, the undersigned is not persuaded that Family Heritage's reliance on the forfeiture clause in the Marketing Agreements exhibits bad-faith sufficient to maintain the unjust enrichment claims on the matters of commissions, advancement accounts, and premiums from policies sold.  The forfeiture provision was used by Family Heritage in the way that it was written in the Marketing Agreements.  Thus, Plaintiffs have not proven that the bad-faith exception applies to the matters contained in the Marketing Agreement.

The Court grants summary judgment as to the unjust enrichment claims relating to the commissions, advancement accounts, and premiums sold, as described in the Marketing Agreements.  Summary judgment is denied as to unjust enrichment resulting from the retaining or redistribution of the former sales organization, Dynasty.

C.  *Count Four: Conversion*

"Under Ohio law . . . [a] tort claim based on the same actions as the contract claim will exist only if the breaching party also breaches a duty owed separately from that created by the contract."  *Toledo Mack Sales & Serv. v. Mack Trucks, Inc.*, 437 F. App'x 381, 385 (6th Cir. 2011) (cleaned up).  "The threshold inquiry for a conversion claim is whether there exists some

---

[2] The Court also maintains that "[d]espite this finding that the liquidated damage provision is not enforceable, Defendant Family Heritage retains the right to try to establish Salerno's breach of the exclusivity requirements and to establish the resulting damages." *See* Order, ECF No. 39 at PageID #: 828.

8

(1:23CV1419)

property interest or right." *Bunta v. Superior VacuPress, L.L.C.*, 218 N.E.3d 838, 845 (Ohio 2022).  "[I]t is now generally held that intangible rights which are customarily merged in or identified with some document may also be converted." *Id.* at 844.  "Where an action for conversion is based on the conversion of cash, the action will 'only lie if identification is possible and there is an obligation to deliver the specific money in question.'" *Gascho*, 863 F. Supp. 2d at 700 (listing for example, funds which have been sequestered).

Family Heritage argues there must be a "separate, extra-contractual duty" for a conversion claim to viable under Ohio law.  Family Heritage claims that it has not violated such a duty to permit the conversion claim.  *See* SEALED Mot. for Partial Summary J., ECF No. 72 at PageID #: 1308.  Plaintiffs retort that the commissions they are owed are (1) a property interest which is (2) clearly identifiable and (3) separate from the contract due to Family Heritage's "deceptive conduct."  *See* SEALED Mem. in Opp'n, ECF No. 81 at PageID ##: 1647–48.

The Court finds, without deciding, that while the retention of the commissions may violate the contract, it is not the violation of any separate duty that Family Heritage owed to Plaintiffs.  Although Plaintiffs argue that Family Heritage is engaging in deceptive conduct by retaining the commissions owed to them, the commissions have accrued, vested, and are owed to Plaintiffs because of the Marketing Agreements.  *See Toledo Mack Sales & Serv.*, 437 F. App'x at 381 ("Once the district court correctly determined that '[MTI's] obligation to purchase TMSS's parts inventory arose from the Distributor Agreement,' it was established that the conversion claim is based on the same actions as the contract claim.")  As a result, the retention of the commissions is a breach of the Marketing Agreement and not a valid tort claim.  "The conversion claim is therefore duplicative of the breach of contract claim and is not permitted under Ohio law." *Id.*  Thus, Family Heritage is granted summary judgment as to Count Four.

9

(1:23CV1419)

### D.  *Count Five: Defamation*

The Supreme Court of Ohio has found that

> To establish defamation, the plaintiff must show (1) a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012).  A court decides as a matter of law if the allegedly defamatory statements are actionable by considering the totality of the circumstances, the context of the publication, and the reasonable reader's interpretation.  *Id.* at 853.

The Supreme Court of Ohio has stated that "[t]he essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (citing *Hahn v. Kotten*, 331 N.E.2d 713 (Ohio 1975)).  "A qualified privilege may be defeated only if a claimant proves with convincingly clarity that a publisher acted with actual malice" or an "abuse of privilege." *Id.*  Actual malice is "defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* (citing *Jacobs v. Frank*, 573 N.E.2d 609 (Ohio 1991)).

Family Heritage argues that (1) there are no questions of fact on the defamation claim, (2) there was no publication of false statements, or (3) it lacked the required degree of fault due to qualified privilege.  Family Heritage also argues that "[Mr.] Shanaberger made no false statements with respect to Plaintiffs' activities" because the agreements were terminated, and Mr. Salerno did sell other insurance companies' products.  *See* SEALED Mot. for Partial Summary

(1:23CV1419)

J., ECF No. 72 at PageID #: 1311.  Family Heritage further argues that even if the statements were false, qualified privilege protected the communication, meaning Family Heritage had to have acted with actual malice.  ECF No. 72 at PageID #: 1311.

In the Complaint, Plaintiffs allege that (1) Family Heritage made a statement through Mr. Shanaberger, (2) to agents and agency owners, (3) claiming that Plaintiffs were in breach, caused harm, and were detrimental to Dynasty salespersons, (4) which harmed Plaintiffs' reputation and relationships in the industry, and (5) Family Heritage acted knowingly, or with malice, or with aggravated or egregious fraud.  *See* Compl., ECF No. 1 at PageID #: 40, ¶¶ 137–44.  Plaintiffs provide further detail, arguing that Mr. Shanaberger's made a statement to Mr. Southerland, a current agency owner, calling Mr. Salerno a liar and a cheat, and made "gross descriptions" of the reason behind Mr. Salerno's termination.  *See* SEALED Mem. in Opp'n, ECF No. 81 at PageID #: 1651.

Family Heritage suggests that there is no question of fact remaining in the defamation claim.  That is not so.  Family Heritage and Plaintiffs disagree on the falsity of the statements.  It is undisputed that Mr. Shanaberger spoke with Mr. Southerland to inform him of Mr. Salerno's termination.  But the parties disagree on what was said during that conversation.  Considering the facts in the light most favorable to the non-moving party, Mr. Shanaberger may have told Mr. Southerland that Mr. Salerno is "a liar and a cheater," and compared Mr. Salerno's actions to a "cheating spouse and father who abandoned his son."  *See* SEALED Mem. in Opp'n, ECF No. 81 at PageID #: 1651.  Even though Family Heritage terminated Mr. Salerno and based that termination on his involvement in the sale of competing insurance products, the rest of those alleged statements are not clearly in a manner "true" warranting dismissal of the defamation claim.

11

(1:23CV1419)

Family Heritage's next argument raises the affirmative defense of qualified privilege. The burden is on the party seeking the defense of qualified privilege and if "the circumstances of the occasion for the alleged defamatory communications are not in dispute, the determination of whether the occasion gives the privilege is a question of law." *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995). The circumstances of the communication are disputed. *Compare* ECF No. 72 at PageID #: 1313 (Family Heritage stating that Family Heritage and the agency owners had a "shared interest in facilitating a smooth transition") *and* ECF No. 81 at PageID #: 1653 (Plaintiffs stating that Mr. Shanaberger and Mr. Southerland are "not aligned" in private interests and at a minimum Mr. Southerland did not share in "[Family Heritage's] interest in defaming Mr. Salerno or his companies"). Furthermore, if the statements Plaintiffs alleged were exchanged during Mr. Shanaberger and Mr. Southerland's conversation, it is difficult to believe that the statements were "limited in their scope" and published in a "proper manner." *Jackson*, 883 N.E.2d at 1064.

Family Heritage has not met its burden to establish qualified privilege. Thus, Family Heritage's motion for summary judgment on Count Five (defamation) is denied.

## IV. Conclusion

Accordingly, Defendant Family Heritage's Motion for Partial Summary Judgment (ECF Nos. 72 and 73) is denied in part and granted in part:

- Summary judgment is denied as to Count One (Declaratory Judgment);

- The Court grants summary judgment on the claims for unjust enrichment relating to the commissions, advancement accounts, and premiums sold, as described in the Marketing Agreements. Summary judgment is denied as to the claims for unjust enrichment

12

(1:23CV1419)

resulting from the retaining or redistribution of the former sales organization, Dynasty,

within Count Three (Unjust Enrichment);

- Family Heritage is granted summary judgment as to Count Four (Conversion).  Count

  Four is dismissed; and

- Summary judgment is denied as to Count Five (Defamation).


IT IS SO ORDERED.


March 19, 2025                                          */s/ Benita Y. Pearson*
Date                                                        Benita Y. Pearson
                                                              United States District Judge

13